[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 20-12240

————————————————

In Re: KRISTINA GAIME,

Debtor.

————————————————————————————————

STATE FARM FLORIDA INSURANCE COMPANY,
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY,

Plaintiffs-Appellants,

*versus*

DAWN CARAPELLA,
as Bankruptcy Trustee of The Estate of Kristina
Gaime, Debtor,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:19-cv-02573-TPD,

Bkcy No. 8:18-bk-05198-RCT

_____

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

NEWSOM, Circuit Judge:

This appeal concerns the meaning and application of the Bankruptcy Code's "automatic stay" provision, which, in pertinent part, prohibits any "entit[y]" from "commenc[ing] or continu[ing] . . . a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before" the bankruptcy petition was filed.  11 U.S.C. § 362(a).  In this case, one party obtained a significant wrongful-death judgment in state court against another, the latter of whom was insured by State Farm.  After the state-court winner filed a petition for involuntary bankruptcy against the state-court loser, State Farm moved to intervene, post-judgment, in the wrongful-death action.  This appeal requires us to decide whether the automatic-stay provision precludes State Farm's motion to intervene.  Because we hold that it does,

and because the bankruptcy court didn't otherwise abuse its discretion in refusing to lift the stay, we will affirm.

## I

## A

The events that underlie this appeal are truly horrific. In 1999, Kristina Gaime drugged her two young sons, Matthew and Adam Rotell, and put them, along with herself, in a running car in a closed garage. Matthew died; Adam and Gaime survived. Gaime was subsequently convicted of second-degree murder and sentenced to prison, where she remained until 2016. At the time of the underlying events, Gaime had automobile- and homeowners-insurance policies with State Farm.

In 2001, Matthew's estate, Adam, and the boys' father Stephen Rotell (collectively, "the Rotells") sued Gaime in Florida state court for wrongful death and bodily injury. Gaime tendered her defense to State Farm, who appointed an attorney, Bryan Reynolds, to defend her. State Farm filed separate declaratory judgment actions against the Rotells and Gaime in Florida state court seeking determinations that Gaime's policies didn't cover the incident and that it had no duty to defend or indemnify her.

After State Farm filed the declaratory judgment actions, the Rotells filed a fourth amended complaint in the wrongful-death suit, and Gaime filed a motion to dismiss, on which the state court reserved ruling until the coverage and duty-to-defend questions were resolved. Around the same time, the Rotells discussed a

settlement with Gaime's State-Farm-retained lawyer, Reynolds. The Rotells allege that State Farm rejected the settlement offer even though Gaime wished to accept it and that the settlement would have allowed Gaime to avoid subsequent liability.

After State Farm rejected the Rotells' settlement offer, the state court ruled in State Farm's favor in the declaratory judgment actions—holding that its policies didn't cover the incident and that it had no duty to defend Gaime—and State Farm withdrew from the wrongful-death lawsuit. Thereafter, the Rotells filed an untimely fifth amended complaint in the wrongful-death action. Gaime, still imprisoned, didn't respond. The state court entered a default judgment against Gaime on the issue of liability, and the case proceeded to a jury trial on damages. The jury entered a verdict in favor of the Rotells in the amount of almost $505 million.

## B

Because Gaime was essentially insolvent, the Rotells petitioned the bankruptcy court for involuntary Chapter 7 bankruptcy against her for the half-billion-dollar judgment. Gaime didn't respond to the Rotells' petition, and the bankruptcy court entered an order subjecting Gaime's assets to its control and appointed Dawn Carapella as trustee. The verdict is Gaime's only liability, and the bankruptcy estate's sole assets are claims against State Farm for bad faith and malpractice. In her capacity as trustee, Carapella sued State Farm in Florida state court, alleging that State Farm acted in bad faith when it rejected the Rotells' settlement offer before withdrawing from the wrongful-death suit.

## C

That brings us to the present dispute. After the trustee sued it for bad faith, State Farm sought to intervene, post-judgment, in the Rotells' wrongful-death action against Gaime. Specifically, State Farm filed a motion to intervene and a motion to vacate the judgment against Gaime on the ground that the Rotells' fifth amended complaint was untimely and that the default judgment against Gaime was therefore void. State Farm presumably hoped that if it could successfully vacate the state-court judgment against Gaime, then there would be no bad-faith claim against it and thus nothing for the Rotells to pursue in bankruptcy court.

Importantly, though, State Farm's motion to intervene required it to overcome a procedural bar in the bankruptcy court. In particular, it had to ask that court for relief from the automatic stay, which, as already explained, prohibits any "entit[y]" from "commenc[ing] or continu[ing] . . . a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before" the bankruptcy petition was filed. 11 U.S.C. § 362(a). State Farm sought relief from the stay, but the bankruptcy court denied its motion. The district court affirmed that denial.

State Farm now appeals. It argues (1) that § 362(a)'s automatic-stay provision doesn't apply to its motion to intervene in the underlying wrongful-death suit against Gaime; (2) that if the stay does prevent it from intervening, then it violates the Due Process Clause; and (3) that the bankruptcy court otherwise procedurally

6                    Opinion of the Court                    20-12240

erred in refusing to lift the stay. We disagree on all counts and affirm.[1]

## II

## A

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition—either voluntary or involuntary—"operates as a stay, applicable to all entities," of—

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The question here is whether State Farm's motion to intervene constitutes a "continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title."

---

[1] We review the district court and bankruptcy court's legal conclusions de novo and findings of fact for clear error. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). We review a bankruptcy court's decision to keep an automatic stay in place for abuse of discretion. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989).

Section 362(a)'s plain language makes clear that it does. That is so for the following reasons.

*First*, the stay applies "to all entities." State Farm has never contended that it isn't an "entity" within the meaning of § 362(a).

*Second*, the stay applies to any "judicial, administrative, or other action or proceeding against that debtor." It doesn't matter, as State Farm asserts, whether it is seeking relief from the stay to act "offensive[ly]" or "defensive[ly]"—*i.e.*, whether it wants to raid the estate or protect it. Br. of Appellant at 17. Rather, what matters is whether the underlying "action or proceeding" is "against the debtor." Here, the "action" into which State Farm wants to intervene—namely, the Rotells' state-court wrongful-death action—is indeed "against the debtor," Gaime.

*Third*, by intervening in the wrongful-death action in order to vacate the resulting judgment, State Farm would "continu[e]" that action—again, without respect to whether its proposed intervention was for the purpose of benefiting Gaime. It is enough, we think, that State Farm's intervention would add an entry to the wrongful-death action's docket and require an additional court order. *See Continuation*, Oxford English Dictionary (online ed.) (last visited August 9, 2021) ("The causing of anything to continue or go on.").

*Finally*, the adjectival phrase "[t]hat was or could have been commenced before the commencement of the case under this title" modifies the nominal phrase "action or proceeding." Accordingly,

it is irrelevant, as State Farm contends, that Florida law wouldn't have permitted it to *file its motion to intervene* before the trustee had brought a bad-faith claim. The dispositive point is that the underlying "action" against the debtor—*i.e.*, the wrongful-death suit—"was . . . commenced" before the bankruptcy petition. Because it was, State Farm cannot—without relief from the stay—do anything that would "continu[e]" that action.

Accordingly, we hold that State Farm's effort to intervene in the Rotells' wrongful-death action falls within the terms of § 362(a)'s stay provision.[2]

**B**

State Farm further argues that if the stay provision applies to, and thus precludes, its motion to intervene in the wrongful-death action, it will be deprived of due process because it will have no forum in which to litigate the underlying validity of the wrongful-death judgment against Gaime. Without citing relevant legal authority, State Farm asserts that it must be permitted to intervene in the wrongful-death action in order to challenge the validity of

---

[2] Separately, State Farm asserts that the district court erred by invoking § 362(a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." To be sure, the district court referenced § 362(a)(3), but in rejecting State Farm's arguments that the stay didn't apply, it didn't rely on that provision. So while State Farm is correct that § 362(a)(3) wouldn't apply to it because it isn't seeking to obtain or exercise control over the bankruptcy property, that provision didn't underlie the district court's decision.

the judgment against Gaime and that the bankruptcy court's and district court's orders enforcing the stay prohibit it from doing so. At oral argument, State Farm directed our attention to a December 2020 order of the Hillsborough County Circuit Court holding, in the context of the trustee's bad-faith lawsuit, that State Farm lacked "standing" under Florida law to challenge the underlying default judgment against a third party, Gaime. *Dawn Carapella v. State Farm Fla. Ins. Co.*, No. 18-CA-007981 (13th Fla. Cir. Ct. Dec. 28, 2020).

We find no merit in State Farm's due process argument. Due process requires only the "opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (quotation marks omitted); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."). State Farm has had two such opportunities. As we will explain, at the first, State Farm voluntarily withdrew from the wrongful-death action, and, at the second, it made its case to the state court handling the bad-faith lawsuit but lost.

Initially, after the Rotells had sued Gaime, State Farm made a conscious decision—for whatever reason, strategic or otherwise—to seek declaratory judgments that Gaime's policies didn't cover her wrongdoing and the Rotells' injuries. While those cases were pending, State Farm then advised Gaime to reject the Rotells' settlement offer. Once it successfully obtained the declaratory judgments, State Farm terminated its defense of Gaime in the

wrongful-death lawsuit.  When it advised Gaime to reject the settlement offer while seeking to alleviate itself of the duty to defend, it assumed the risk that it might later face a bad-faith lawsuit.  Now, facing that suit, State Farm seeks, in effect, to unwind those previous decisions, or at least their consequences.  Being denied that chance doesn't constitute a deprivation of due process.

State Farm had yet another opportunity in which to contest the validity of the wrongful-death judgment against Gaime when it presented its argument—that the untimeliness of the Rotells' fifth amended complaint violated Gaime's due process rights and thus rendered the judgment in the Rotells' favor void—to the Hillsborough County Circuit Court in the bad-faith action against it. The fact that the court held that State Farm lacked "standing" to do so under Florida law doesn't mean that State Farm was denied due process.  "[D]ue process requires only that a person have a meaningful opportunity to present his claims; it does not guarantee success."  *Am. Nat'l Bank & Tr. Co. v. City of Chicago*, 826 F.2d 1547, 1550 (7th Cir. 1987).  And, of course, if State Farm is dissatisfied with the Hillsborough County court's order—either on due-process grounds or otherwise—it can appeal that order up the chain in the state-court system.

## C

Lastly, State Farm contends that the bankruptcy court abused its discretion by refusing to lift the stay and that the court procedurally erred by requiring it to prove—rather than the trustee to disprove—that there was cause to lift it.  In particular, State Farm

contends that § 362(g)(2) of the Bankruptcy Code places the burden of proof on the party opposing a motion to lift the automatic stay to disprove the existence of cause.

State Farm is correct that the bankruptcy court placed the burden on it to show cause, rather than on the trustee to show the absence of cause. State Farm is also correct that the bankruptcy court erred in doing so. *See* 11 U.S.C. § 362(g)(2) ("[T]he party opposing [the lifting of the stay] has the burden of proof on all other issues."); *In re Allstar Bldg. Prods., Inc.*, 834 F.2d 898, 899 (11th Cir. 1987) (en banc) (per curiam) (holding that the party opposing a motion for relief from the stay has the burden to show the absence of cause to lift it). We hold, though, that any error here was harmless because the trustee demonstrated that there was no cause to lift the stay.

"There is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) cause exists to lift the automatic stay." *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013) (quotation marks omitted). Instead, in determining whether cause exists to lift the stay, courts look to the "totality of the circumstances." *Id.* Here, the bankruptcy court identified and weighed the benefits and burdens of lifting the stay. It concluded, correctly in our view, that State Farm had decided, for its own reasons, to withdraw from Gaime's defense in the wrongful-death litigation and that it now wants "a second bite at the apple" to relitigate that judgment. The court further concluded that allowing it that second bite would unduly increase the bankruptcy

trustee's administrative expenses. And, for reasons already explained, there is no grave unfairness to State Farm; it had the opportunity to contest the wrongful-death judgment's validity as a defense in the bad-faith lawsuit—even if the state trial court ultimately rejected that defense. We see no reversible error in the bankruptcy court's refusal to lift the stay.

## IV

For the foregoing reasons, we hold (1) that 11 U.S.C. § 362(a)'s automatic stay provision applies to State Farm's motion to intervene in the wrongful-death suit against Gaime, (2) that State Farm hasn't been deprived of due process, and (3) that there otherwise was no cause to lift the stay.

**AFFIRMED**.